UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PATRICK WAYNE NACOL                                                              PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 1:14CV275-HSO-RHW

CAROLYN W. COLVIN                                                               DEFENDANT

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Patrick Wayne Nacol filed an application for disability insurance benefits alleging

disability beginning January 1, 2007, resulting from a back injury, a tumor on his spinal cord, an

imploded and torn disk, degenerative bone disease, severe back pain, loss of bladder control,

numbness in his feet and legs, arthritis, and depression.  Doc. [6] at 65-68, 76.  Nacol was 47

years old on the date of his application for disability benefits.  *Id.* at 65.  He obtained a GED.  *Id.*

at 77.  Prior to the alleged onset of disability, Nacol was employed as the owner of Camper Sales,

Service, Parts, and Accessories.  *Id.*

The Commissioner denied Nacol's application at the initial administrative stage.  Doc. [6]

at 41-43.  Nacol then requested and was granted a hearing before an Administrative Law Judge

(ALJ).  *Id.* at 26-31, 36.  At the hearing, Nacol amended the alleged date for onset of disability to

January 1, 2009.  *Id.* at 378.  The ALJ determined that Nacol had not engaged in substantial

gainful employment since January 1, 2009, through his last date of insured, which he determined

to be June 30, 2010.  *Id.* at 16.  The ALJ found that Nacol had the severe impairment of

lumbosacral degenerative disc disease.  *Id.* at 16-17.  However, the ALJ found that Nacol's

impairments did not meet or equal any of the listed impairments for presumptive disability.  *Id.* at

17-18.  According to the ALJ, Nacol retained the residual functional capacity (RFC) to perform

the full range of sedentary work.  *Id.* at 18-21.  Although Nacol could not perform his past

relevant work, the ALJ concluded that Nacol was still capable of performing a significant number of jobs in the national economy based on the Medical-Vocational Guidelines. *Id.* at 21-22. Accordingly, the ALJ found that Nacol was not disabled. *Id.*

The Appeals Council denied Nacol's request for review of the ALJ's decision. Doc. [6] at 7-9. Nacol then filed the instant cause of action requesting that the ALJ's decision be reversed, or alternatively, that the case be remanded to the ALJ for further proceedings. Doc. [1]. In summary Nacol raises the following issues: (1) The ALJ failed to conclude that Nacol's lumbar lesion or tumor is a severe impairment that can cause additional restrictions; (2) the ALJ relied solely upon a 2008 MRI diagnosis prior to the alleged date of onset (January 1, 2009); and ignored the fact that Nacol's condition worsened after this point; (3) the ALJ inaccurately concluded that Nacol's "symptoms were essentially unchanged regardless of his ability to earn wages at or above the substantial gainful activity"; (4) & (5) the ALJ erred in his assessment of Nacol's credibility; (6) the ALJ erred by failing to consider Nacol's non-exertional limitations and incorrectly based his ruling on the Medical-Vocational Guidelines, without supporting testimony from a vocational expert; (7) the Appeals Council erred in summarily concluding that substantial evidence supported the ALJ's denial of benefits. Doc. [10].

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are

2

conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to

adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id*.

**<u>Other Impairments</u>**

In the first issue identified by Nacol, he argues that the ALJ erred in concluding that Nacol's only severe impairment was lumbosacral degenerative disc disease.  Doc. [10] at 4-5. Nacol asserts that the ALJ should have found an additional impairment based on Nacol's lumbar lesion or tumor which is displacing the nerve root in Nacol's spine and which can cause severe restrictions.  In support of this assertion, Nacol relies on a report from treating physician, Dr. Eric J. Graham, dated June 27, 2008, indicating that an MRI revealed an "intradural, extramedullary mass posterity at L2-3 displacing adjacent nerve roots."  Doc. [6] at 316.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit held that an ALJ must reference *Stone* or the correct severity standard, which provides that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Stone*, 752 F.2d at 1011.  In this case

4

the ALJ did cite to *Stone v. Heckler*, and he used the language from the rule in *Stone* in his opinion. *See* doc. [6] at 16-17.

When evaluating other medically determinable impairments, the ALJ considered Nacol's hypertension and mental impairment. Doc. [6] at 17. The ALJ found that neither of these qualified as a severe impairment. *Id.* Nacol is correct that the ALJ did not mention the lumbar lesion or tumor in the decision. However, the mere diagnosis of an impairment does not establish a disabling impairment per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Although Nacol identifies a diagnosis of lumbar lesion in the record, he does not cite to any evidence of record suggesting that the lumbar lesion is a disabling impairment. He does cite to Dr. Graham's report indicating that the lesion caused nerve root displacement. The ALJ generally considered Nacol's complaints of disabling pain in his credibility determination. The medical records do indicate that the tumor was most likely benign and that it was being evaluated at six-month intervals. *See* doc. [6] at 284, 316.

When assessing the disabling nature of Nacol's back condition, the ALJ noted that there were no medical opinions of record from any of Nacol's treating sources regarding his RFC. *Id.* at 20. The only medical opinion of record assessing Nacol's RFC was that of Dr. Thomas S. Tapley, who conducted a consultative exam and filled out an RFC evaluation form. *Id.* at 323-330. Dr. Tapley identified the lumbar lesion as one of Nacol's "symptoms" but noted that it was "1 cm, possible benign neural or meningeal origin being followed with scans only". Id. at 328. Hence, the lumbar lesion or tumor was considered in Dr. Tapley's RFC assessment, which in turn was considered by the ALJ when determining Nacol's level of disability.

Even if the ALJ's failure to identify the lumbar lesion or tumor as a separate impairment

5

constitutes an error, the error is harmless.  The severity or non-severity of this condition ultimately was not determinative of Nacol's disability.  At step two, the ALJ found that Nacol had the severe impairment of lumbosacral degenerative disc disease.  Thus the ALJ found that Nacol prevailed at step two and then proceeded to the remaining steps when evaluating Nacol's claim of disability as it related to his back condition.  Consequently, the severity or non-severity of Nacol's lumbar lesion does not provide a basis for remand.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).

## Worsening Condition

In the second and third issues identified by Nacol, he argues that the ALJ ignored evidence that his back condition worsened over time and inaccurately found that Nacol's symptoms were unchanged over time.  Doc. [10] at 5-6.  The ALJ determined that Nacol had mild spinal stenosis and found that the "evidence of record shows, the claimant's symptoms were essentially unchanged regardless of his ability to earn wages at or above the substantial gainful activity level."  Doc. [6] at 20.  Nacol argues that the ALJ relied solely on a 2008 MRI diagnosis when evaluating his back condition.  Nacol further asserts that the ALJ ignored medical evidence from his treating physician indicating that the condition worsened over time.

Contrary to Nacol's assertion, the ALJ did not rely solely on a 2008 MRI diagnosis when evaluating the severity of Nacol's back condition.  Rather, the ALJ recognized the existence of abnormal MRI findings and cited to exhibits 8F and 9F, which correspond to medical records from Open MRI, LLC dated May 6, 2010, and medical records from Dr. Graham dated June 27,

6

2008 to May 10, 2010. *Id.* at 19. When assessing Nacol's back condition, the ALJ specifically cited to medical records from 2009 and 2010. *Id.* Thus, Nacol's contention that the ALJ ignored certain medical evidence and relied solely on the 2008 MRI is without merit.

Nacol takes exception with the ALJ's finding that Nacol's "symptoms were essentially unchanged". The ALJ made this finding when evaluating Nacol's RFC. Doc. [6] at 20. Just prior to that statement, the ALJ found that "[t]here was a period of time during which the claimant reported improvement of his symptoms; however, he reported that he was involved in an automobile accident, which exacerbated his pain symptoms in June 2010." *Id.* In fact the ALJ went on to acknowledge that "the record contains . . . more recent treatment records documenting a progression of [Nacol's] symptoms, the treatment records prior to his date last insured fail to document any significant change in his condition that would suggest that he would be unable to perform the full range of sedentary work." *Id.* There is medical evidence supporting the ALJ's conclusion that Nacol's condition did show signs of improvement. As the ALJ noted, Nacol underwent an X-Stop procedure in November 2009. *Id.* at 19. In a May 10, 2010, medical record, Nacol reported improvement in his symptoms after the procedure and that he continued to work. *Id.* at 294. The ALJ further noted that a February 2010 x-ray revealed that the device was in satisfactory position and revealed unchanged degenerative disc disease. *Id.* at 19, 251. A report from Dr. Shaun W. McKee dated May 6, 2010, also indicated "no evidence for spinal stenosis or cord compression" in an MRI study. *Id.* at 284. Dr. McKee also noted "no significant change" when compared with a prior MRI study dated June 6, 2008. *Id.*

Nacol's citation to other medical evidence in attempt to establish that his condition worsened over time goes to the weight of the evidence. Nacol is re-arguing the relative merits of

conflicting medical evidence relating to the progression of his back condition.  However, his

arguments do not negate the conclusion that substantial evidence supports the ALJ's conclusions.

Moreover, the relevance of Nacol's argument regarding the progression of his spinal stenosis is

unclear.  The ALJ recognized Nacol's back condition (lumbosacral degenerative disc disease) as

a severe impairment and assigned an RFC accordingly.  Nacol does not identify any medical

evidence suggesting that evidence of a worsening condition should have resulted in a more

restrictive RFC.

### Credibility

In the fourth and fifth issues identified by Nacol, he disputes the ALJ's credibility

findings.  Doc. [10] at 6-12.  He argues that the ALJ relied on irrelevant statements made by

Nacol in February 2009 regarding when he would undergo surgery.  He further argues that the

ALJ relied on other statements made by Nacol about the fact that he continued to work despite

back pain.

Judgement as to the credibility of testimony is the sole province of the ALJ.  *See Carrier*

*v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  The Fifth Circuit has held that the ALJ's

credibility determination is entitled to considerable deference.  *See Falco v. Sullivan*, 27 F.3d

160, 164 (5th Cir. 1994).  Nacol's lengthy argument regarding credibility and whether he was

capable of a full range of sedentary work goes to the weight of the evidence and the ALJ's

ultimate assessment of witness credibility.

In February 2009, Nacol advised his treating physician that he would undergo surgery

"when he had the time".  Contrary to Nacol's assertion, the ALJ does not appear to have relied on

this statement when assessing Nacol's credibility.  *See* doc. [6] at 19.  Rather, the ALJ mentioned

this statement when assessing the medical evidence as it related to the medically determinable impairment of lumbosacral degenerative disc disease.  In fact the ALJ's credibility assessment occurred later in the opinion and without reference to Nacol's decision to delay surgery.  *Id.* at 19-20.  Nacol is correct that the ALJ did rely on the fact that Nacol continued working as evidence undermining his credibility.  Ultimately the ALJ found Nacol to be less than fully credible; however, he did find that Nacol was not completely lacking in all credibility.  *Id.*  The ALJ agreed that Nacol could not perform the exertional requirements of his previous employment because he determined that he could perform only sedentary work.  Nacol's arguments about the severity of his symptoms merely go to the weight of the evidence and witness credibility.  He fails to demonstrate that the ALJ's decision is not supported by substantial evidence or that the Commissioner used improper legal standards to evaluate the evidence.  Given the Fifth Circuit's prohibition against re-weighing the evidence and given that credibility determinations are considered the sole province of the ALJ, the undersigned finds that Nacol's arguments are without merit.

**<u>Non-exertional Limitations</u>**

Nacol argues that the ALJ failed to consider his non-exertional limitations and therefore erred in relying on the Medical Vocational Guidelines without supporting testimony from a vocational expert.  Doc. [10] at 12-14.  In support of this argument, Nacol asserts that he was unable to do sustained work activities in an ordinary work setting on a regular and continuing basis.

Use of the Medical-Vocational Guidelines, or Grids, is appropriate when a claimant suffers only exertional impairments or if the non-exertional impairments do not significantly

affect his RFC.  *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  Otherwise, the ALJ must rely on the testimony of a vocational expert or other similar evidence to establish that other work is available that the claimant is capable of performing.  *Fraga*, 810 F.2d at 1304.

Nacol fails to identify any non-exertional impairment that would prevent him from working on a regular and continuing basis.  He appears to argue that the inability to work on a regular and continuing basis should itself be considered a non-exertional impairment.  The undersigned disagrees.  The ability to work on a regular and continuing basis is one of the considerations required of an ALJ when making an RFC evaluation.  *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).  The ALJ concluded that Nacol was not disabled based on a determination of his RFC.  The ALJ cited to 20 C.F.R. § 404.1545 and Social Security Ruling 96-8p, "both of which make clear that RFC is a measure of the claimant's capacity to perform work 'on a regular and continuing basis.'" *Id.*  The ALJ identified degenerative disc disease as a severe impairment.  As a result of this impairment, Nacol has certain exertional limitations.  However, Nacol fails to identify a non-exertional impairment that the ALJ should have considered.  Because there were no identifiable non-exertional impairments, the ALJ properly relied on the Medical Vocational Guidelines.

Even if the undersigned were to consider the question of whether Nacol could work on a regular and continuing basis, there is substantial evidence supporting such a conclusion.  The record contains several statements from Nacol that he continued to work despite his back condition.  Nacol's attempts to explain away or rationalize these statements go to the weight of evidence and credibility determinations, which are the province of the ALJ and not a proper

10

subject for this Court.  The ALJ's RFC determination inherently included the finding that Nacol is capable of performing the full range of sedentary work on a regular and continuing basis.  *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)("Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding claimant's ability to obtain employment.").  Dr. Tapley, who conducted a consultative examination and completed an RFC form, indicated that Nacol is capable of standing or walking, with normal breaks, for about six hours out of an eight-hour work day and that Nacol is capable of sitting, with normal breaks, for about six hours out of an eight-hour work day.  Doc. [6] at 324.  The ALJ specifically considered Dr. Tapley's opinion when finding that Nacol was capable of performing a full range of sedentary work.  *Id.* at 20.  The ALJ also noted that Nacol continued working through the date last insured and that he continued at the substantial gainful activity level for many years despite back pain.  *Id.*  Thus, there is substantial evidence supporting the ALJ's conclusion that Nacol is capable of performing the full range of sedentary work on a regular and continuing basis.

**Appeals Council**

Nacol argues that the Appeals Council erred when it summarily concluded that substantial evidence supported the ALJ's denial of benefits.  Doc. [10] 14-15.  Specifically, he points to newly submitted evidence accepted and made a part of the record by the Council, that he believes should have compelled a finding that the ALJ's denial of benefits was erroneous and contrary to the weight of evidence.  The undersigned finds that the Appeals Council did not err in upholding the ALJ's decision.

Subsequent to the ALJ's decision, Nacol obtained a letter from his treating physician, Dr.

Graham, dated January 16, 2014.  Dr. Graham's letter consists of one-paragraph:

> I have reviewed Mr. Nacols' chart.  There is a question arising whether or not the
> patient was capable of gainful employment during the 2010 calendar year.  Due to
> the level of narcotic medication he was requiring, I would say that he would be
> unable to maintain any meaningful employment.

Doc. [6] at 359.  A treating physician's opinion pertaining to whether an individual can or cannot

perform work is not a medical opinion, but is an issue reserved to the Commissioner.  *See Frank*,

326 F.3d at 620.  Dr. Graham concluded that Nacol was unable to maintain meaningful

employment.  Such an opinion is not entitled to special significance.  *Id.*  Dr. Graham's opinion

makes no mention of Nacol's back condition, which is the severe impairment identified by the

ALJ in his opinion.  Rather, Dr. Graham mentions only the level of narcotic medication Nacol

was taking.  Dr. Graham's opinion pertains only to Nacol's ability to work and does not mention

any objective medical evidence or clinical findings to support this conclusion.  As a matter of

law, Dr. Graham's opinion regarding Nacol's ability to work was not entitled to special

significance; therefore, the Appeals Council did not err in upholding the ALJ's decision.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Nacol's [9] Motion for

Judgment on the Pleadings be DENIED and that the decision of the Commissioner be affirmed.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must

serve and file written objections within fourteen (14) days after being served with a copy unless

the time period is modified by the District Court.  A party filing objections must specifically

identify those findings, conclusions and recommendations to which objections are being made;

the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 11th day of December, 2015.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE

13